292 A.2d 877.

EDWARD A. FLANAGAN *vs.* LEO J. CONLEY, JR.

JULY 10, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

PAOLINO, J. This is a civil action to recover damages for personal injuries suffered in an accident in which an automobile operated by the defendant struck a truck in which the plaintiff was sitting. The case was heard before a justice of the Superior Court sitting with a jury and resulted in a verdict for the defendant. After the trial justice denied the plaintiff's motion for a new trial, he filed an appeal to this court.

The pertinent facts follow. The plaintiff was employed by the city of Warwick as a driver of a rubbish collection truck. On August 15, 1967, a truck driven by him was stopped in the middle of a public highway in that city, while two co-workers were in the back of the truck picking up rubbish cans from each side of the truck. As he was looking in the rear view mirror, plaintiff saw a car coming and the car hit the back of the truck. The plaintiff testified that when the truck was hit by defendant's car it rocked or moved the truck and he went up against the driver's door hitting his left hip area and lower back. He continued to work for about an hour when his back started to bother him and became red and swollen. He drove the truck to the city yard and was then taken to the hospital where he was seen by Dr. Peter J. Di Giacomo, his family doctor, who was in the hospital on that day. He testified that he was out of work for 14 weeks and lost a total of $1,237.60 in wages.

Doctor Di Giacomo testified for plaintiff. He diagnosed plaintiff's condition as a lumbosacral strain and described his treatment. He said that plaintiff's injuries disabled him from working from the date of the accident until November 20, 1967. He testified that in his opinion the accident was a competent producing cause of plaintiff's injuries. The plaintiff was treated by him over a period of three months and his bill for services was $225.

A hospital bill for $20 and a $23.63 bill for a back support were introduced into evidence.

The defendant's version of the accident is as follows. He testified that it was a clear day; that he saw the truck stopped about two hundred yards away; that he pulled up in back of the truck, stopped and sounded his horn; that one of the two helpers told him to go around the truck and that while doing so at about 5 miles an hour he hit the back of the truck; and that the edge of the platform

on the back of the truck caught the right front fender of defendant's car and scraped his right front fender and door.

The plaintiff's first assignment of error is that the trial justice erred in refusing to grant his motion to pass the case after defendant's counsel brought to the jury's attention the fact that plaintiff had received workmen's compensation benefits while he was out of work as the result of the injuries received in this accident. This occurred during the cross-examination of plaintiff by defendant's counsel in the context of the following questions, answers, objections and rulings:

"202 Q Well now did you stay in bed the entire time you were out of work?
A No, sir, I didn't.
"203 Q What did you do when you weren't in bed?
A Walked a little bit, tried to get the pain out of my leg.
"204 Q Did you take any medication?
A Yes I took pain pills.
"205 Q Aspirin or what?
A Don't know, capsules that I got from the prescription.
"206 Q This went on for 14 weeks?
A Well [I] started wanting to go back to work, told him I felt pretty good, like to go back to work. Didn't have any money. I was broke, had to go back to work or starve to death.
"207 Q Wait a minute, are you telling us you didn't have any payments —
A Not enough to support myself and my family.
"208 Q Didn't you get paid by the city?
A No I didn't.
"209 Q You deny —
A Did not get no check like a weekly pay from the city.
"210 Q You got paid by the city while you were out.
"Mr. La Salle: I'm going to object.

"Mr. Parks: He brought it out.

"Mr. La Salle: I'm going to object. Unless he's got, he's going to lay some kind of foundation or something, what he's trying to elicit here may be prejudicial. I'm going to object to this line of questioning.

"Mr. Parks: I'd like to be heard.

"The Court: Let me hear you.

"Mr. Parks: Plaintiff has said he was broke. I submit your Honor I can establish, that he received pay while he was out, from the city.

"Mr. La Salle: Well he testified he didn't get pay from the city.

"The Court: Well hadn't been explored very much. Plaintiff did say he had no money. I'll overrule your objection, Mr. La Salle.

"Mr. La Salle: Like an exception.

"The Court: Note your exception.

"211 Q Didn't you receive benefits pay from the city of Warwick while you were out as a result of this accident?

A I collected not a city check, the checks that I used to get every week in my envelope; I did not get them from the city.

"212 Q No you got them from somebody else didn't you?

A Yes.

"213 Q You got compensation, Workmen's Compensation benefits.

A $40 a week yes.

"Mr. La Salle: I'd like to have the jury taken out, I have a motion.

"The Court: Take the jury out please."

The jury was excused. The plaintiff then moved that the case be passed on the ground that such testimony was prejudicial to plaintiff's right to a fair trial. After argument of counsel, the trial justice denied plaintiff's motion. He concluded that this whole line of interrogation was

brought up by the volunteering by plaintiff of the fact that he was broke and he said that the defense was entitled to question plaintiff as to his credibility. After his ruling the jury returned to the courtroom and the examination of plaintiff continued. No cautionary instructions were given to the jury by the trial justice; at no time did he instruct the jurors that the receipt of workmen's compensation benefits had no bearing on the question of defendant's negligence.

Initially we note that there is not any merit to defendant's contention that plaintiff has no standing to raise this question because he did not object to the question: "You got compensation, Workmen's Compensation benefits?" The transcript indicates that plaintiff made known to the court the action which he desired the court to take with respect to defendant counsel's questioning. The transcript also shows that plaintiff immediately stated that he had a motion to make, and that the jury was excused by the trial justice. We are satisfied that he has complied with Super. R. Civ. P. 46.[1] His motion to pass the case was based on his argument that such testimony was prejudicial and, in fact, his first assignment of error is predicated on his objection to the denial of his motion to pass.

---

[1]Super. R. Civ. P. 46 reads as follows:

"Formal exceptions to rulings or orders of the court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take or his objection to the action of the court and his grounds therefor if requested; and if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice him. With the consent of the court a party may object to an entire line of testimony, or to the entire testimony of a witness, or to testimony on a single subject matter, and if such objection shall be overruled, it shall not be necessary for the party to repeat his objection thereafter, but every part of such testimony thereafter introduced shall be deemed to have been duly objected to and the objection overruled."

We believe plaintiff's contention ·has merit. While it is true that in *Storin* v. *Masterson,* 103 R. I. 246, 236 A.2d 249 (1967), and *Colarusso* v. *Mills,* 99 R. I. 409, 208 A.2d 381 (1965), we said *Deighan* v. *E. Turgeon Constr. Co.,* 95 R. I. 42, 182 A.2d 446 (1962), was limited in its application to its own facts, nothing we said in *Storin* and *Colarusso* was intended to mean that information or evidence that plaintiff in a personal injury action is receiving or entitled to workmen's compensation benefits was admissible without restriction.

In *Deighan* the plaintiff had been receiving workmen's compensation benefits. In arguing to the jury there, the defendant's counsel said that a verdict for the plaintiff would permit his employer to evade its obligation to continue to pay the plaintiff such benefits. We granted Deighan a new trial because of the inflammatory nature of the defendant's ·argument. After noting that this argument was highly improper we pointed out that the plaintiff moved that the court instruct the jury to disregard all remarks made in the defendant's argument with reference to the plaintiff's employer. We also noted that the trial justice said that he would cover these matters in the charge and that the plaintiff's exception was noted. We then said:

> "Considering as we do that defendant's argument was highly prejudicial, we are of the opinion that the court should have addressed the jury at once rather than wait until after the noon recess." *Id.* at 45, 182 A.2d at 447.

In *Colarusso* we did not fault this statement in *Deighan.* Rather we referred expressly to the following statement:

> "The interdiction against the place of compensation in a suit by an employee against a tort-feasor while apparently unqualified must on the issues before the court be limited to a prohibition against argument likely to prejudice the jury." 99 R. I. at 416, 208 A.2d at 386.

The narrow issue before us in the case at bar is whether

the trial justice committed prejudicial error in failing to give timely cautionary instructions to the jury on this issue. In *Storin* v. *Masterson, supra,* we found no error in the rulings of the trial justice in admitting testimony relative to workmen's compensation payments. However, in that case we pointed out that upon the initial mention of workmen's compensation, the trial justice admonished the jury that the receipt of the compensation had no bearing whatsoever on the issue of defendants' negligence and the exercise of due care by the plaintiff. We also noted that subsequently, when the jury was given its final instructions, the trial justice again pointed out that the compensation benefits were material only insofar as that finding related to the issue of whether or not plaintiff had entered into an agreement with his employer to reimburse the latter for compensation payments already received. This was not done in the instant case, either by way of a cautionary instruction at the time workmen's compensation was mentioned or in the general charge to the jury.

*Raposa* v. *E. Turgeon Constr. Co.,* 109 R. I. 277, 284 A.2d 75 (1971), was a civil action to recover for personal injuries sustained as a result of the defendant's negligence. The trial justice admitted into evidence a nonprejudicial agreement and a preliminary agreement which had been entered into by the plaintiff and his employer. The plaintiff there argued that by bringing to its knowledge that he had received workmen's compensation benefits the jury was improperly influenced in reaching its verdict. These statements were admitted for the purpose of impeaching the plaintiff's credibility on the issue of contributory negligence. We pointed out that the trial justice carefully instructed the jury as to the limited purpose for which they were admitted and we held that in such circumstances their admission into evidence was not error.

Only last year we had occasion to consider this problem

in a case which involved the injection of improper extraneous matter of a harmful nature in the trial of a case *Salimeno* v. *Barber,* 108 R. I. 705, 279 A.2d 419 (1971). In *Salimeno* we said:

> "Our judicial system is bedded on the assurance afforded to all litigants that the impartiality of a jury's verdict is above suspicion. To accomplish this objective, a jury trial should be conducted so that the jury's verdict will command confidence as a decision that is completely devoid of any influence of prejudice or sympathy. When an improper extraneous matter of a harmful nature is intentionally injected or accidentally comes to the attention of the jury, it is the trial justice's obligation and duty, upon complaint being made, to free the evidence from such matter, if possible, with a proper warning to the jury. On the other hand, if this is not reasonably possible, then he ought to pass the case. (cites omitted) It is immaterial whether the improper information is conveyed to the jury in the form of a question or as a declaration of fact." 108 R. I. at 709-10, 279 A.2d at 421.

We believe that what the court said in *Salimeno, supra,* is equally applicable here. *See Harrod* v. *Ciamciarulo,* 95 R. I. 504, 188 A.2d 459 (1963). The defendant argues that the record indicates that the plaintiff and not the defendant, made the mention of workmen's compensation necessary. As we view the transcript, this is disputable. In any event, it was the defendant's counsel, and not the plaintiff's, who mentioned "Workmen's Compensation benefits." Moreover, even if this information was elicited to test plaintiff's credibility, we believe it was the obligation of the trial justice to instruct the jury as to the limited purpose for which such testimony was admitted. Since we are not convinced that this evidence did not improperly influence the jury, we hold that his failure to instruct the jury was prejudicial error and therefore the denial of his motion to pass the case was an abuse of discretion requiring a new trial. Since our conclusion with respect to this issue

requires a new trial, we need not consider the plaintiff's remaining assignments of error.

The plaintiff's appeal is sustained; the judgment appealed from is vacated and the case is remitted to the Supeiror Court.

*A. Norman LaSalle,* for plaintiff.

*Jordan, Hanson & Parks, A. Lauriston Parks,* of Counsel, for defendant.